IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RODNEY LAMON LUTIN,                    )
                                       )
        Petitioner,                    )
                                       )       CIVIL ACTION NO. 23-0141-JB-MU
                                       )
vs.                                    )       CRIM. A. NO. 20-0115-JB-MU
                                       )
UNITED STATES OF AMERICA,              )
                                       )
        Respondent.                    )

## REPORT AND RECOMMENDATION

This cause is before the Court on Petitioner Rodney Lamon Lutin's Motion Under

28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal

Custody (Doc. 82), the United States's response thereto (Doc. 86), and Lutin's reply

(Doc. 89). This action has been referred to the undersigned for entry of a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule

72(a)(2)(R). Following consideration of all relevant pleadings in this case, it is

recommended that Lutin's § 2255 motion be **DENIED** without an evidentiary hearing.

*See, e.g.,* 28 U.S.C. § 2255(b) (if "the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief," a hearing is not required);

*Rosin v. United States,* 786 F.3d 873, 878 (11th Cir.) ("It is well-settled that the district

court is not required to grant an evidentiary hearing when the defendant's claims are

affirmatively contradicted by the record evidence, nor is a hearing required if the claims

are grounded upon generalizations that are unsupported by the record evidence."), *cert.*

*denied,* 577 U.S. 959 (2015); *Means v. Sec'y, Dep't of Corr.,* 433 F. App'x 852, 855

(11th Cir. 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or

otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* 565 U.S. 1217 (2012); *Allen v. Sec'y, Fla. Dep't of Corr.,* 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' ... or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* 563 U.S. 976 (2011).

### I. Factual and Procedural History

In 2010, Lutin pleaded guilty under a written plea agreement to possession with intent to distribute more than five grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) in this Court. (Crim. A. No.: 10-cr-0081, Docs. 18, 22). As part of that plea agreement, Lutin waived the right to collaterally attack his sentence unless the punishment exceeded the statutory maximum or constituted an upward departure from the guideline range. (*Id.*, Doc. 18 at 11). He was subsequently sentenced to a 51-month term of imprisonment, with eight years of supervised release, on that charge. (*Id.*, Doc. 43).

Ten years later, on November 30, 2020, Lutin pleaded guilty in the instant case, pursuant to a written plea agreement, to conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846. (Docs. 61, 62). The plea agreement limited Lutin's right to file a § 2255 motion to a claim of ineffective assistance of counsel. (Doc. 61, PageID. 422). Lutin admitted that "the United States could prove he conspired with others to possess with intent to distribute a kilogram of cocaine." (*Id.*, PageID. 429). The Court found him guilty of the offense. (Doc. 62).

Because Lutin committed the 2020 offense while on supervised release for the 2010 conviction, the United States Probation Office moved to revoke his term of supervised release. (Cr. A. No. 10-cr-0081-JB-MU, Doc. 57). On August 9, 2021, Lutin appeared before the Court for both a revocation hearing and a sentencing hearing. (Doc. 96 (SEALED)). Lutin's counsel filed a written waiver of the revocation hearing that Lutin signed. (Cr. A. No. 10-cr-0081-JB-MU, Doc. 68). Lutin affirmed in open court that he understood that he had a right to an evidentiary hearing on his revocation and that he intended to waive his right to a hearing on the revocation. (Doc. 96, PageID. 649-50). The District Judge accepted the waiver. (*Id.,* PageID. 650).

The Court found that Lutin violated the terms and conditions of his supervised release based upon the conduct that led to the 2020 charges. (*Id.*). After hearing the parties' arguments, the District Judge, while noting Lutin's five positive drug tests during the time of his supervision, explained that his bigger concern was Lutin's second conviction for "very similar conduct that got [him] in this system in the first place." (*Id.,* PageID. 653-54). The Court also pointed to Lutin's "efforts to escape when law enforcement was apprehending [him], the damage to the vehicles, and the possibility of seriously injuring the officers." (*Id.,* PageID. 654). Finding these facts "extremely concerning," the Court varied upward from the guideline range of 27-33 months to the statutory maximum revocation sentence of 60 months. (*Id.*). The Court also explained to Lutin that it was ordering him to serve the revocation sentence consecutively to the sentence for the 2020 conviction because the revocation related to the 2010 case and was, thus, separate from the 2020 conviction. (*Id.,* PageID. 654-55). At the conclusion of the revocation portion of the hearing, the Court asked if there were "any objections to

3

the Court's findings of fact, conclusions of law, or the manner in which the [revocation] sentence [was] imposed...." (*Id.,* PageID. 655). Lutin's counsel stated: "Nothing other than we previously stated." (*Id.*).

The Court then turned to the sentencing hearing on Lutin's 2020 conviction for conspiracy to possess with intent to distribute more than 500 grams of cocaine. The Court granted the prosecution's motion to depart downward pursuant to U.S.S.G. § 5K1.1. (*Id.,* PageID. 662). After hearing from both parties, the Court sentenced Lutin to 90 months imprisonment, with five years of supervised release. (*Id.,* PageID. 667-69). The Court also advised Lutin that he had fourteen days to file an appeal of his sentence. (*Id.,* PageID. 669). The District Judge again asked for any objections, and defense counsel responded: "Nothing that hasn't already been noted, Your Honor." (*Id.*).

On August 23, 2021, Lutin appealed the sentence on his revocation in the 2010 case, arguing that the court abused its discretion in imposing a 60-month revocation sentence to run consecutively to the sentence for the criminal offense. (Cr. A. No. 10-cr-0081-JB-MU, Doc. 70). The Eleventh Circuit affirmed the sentence as substantively reasonable on September 28, 2022. (*Id.*, Docs. 81, 82). Lutin did not appeal his conviction or sentence in the 2020 case. He did, however, file a Motion to Reduce Sentence pursuant to 18 U.S.C. 3592(c)(2) on May 29, 2024, while his § 2255 motion was pending. (Doc. 91). The Court granted his motion on August 6, 2024, and reduced his sentence on the 2020 conviction from 90 months to 73 months. (Doc. 95).

On April 12, 2023, Lutin filed his motion to vacate in this Court. (Doc. 82). Lutin first challenges his revocation sentence, arguing: 1) his attorney performed deficiently by failing to request a final hearing on the allegations set forth in the revocation petition,

4

which resulted in a sentence that was procedurally and substantively unreasonable; 2) his attorney performed deficiently by failing to object to the classification of his supervised release violations, thereby causing the district court to calculate the guideline range of imprisonment incorrectly; and 3) his counsel rendered ineffective assistance of counsel because he did not argue to the District Court that Lutin was "technically" not on supervised release when he committed the 2020 criminal offense because the First Step Act modified the supervised release term for crack cocaine offenders. (Doc. 82, PageID. 488-89; Doc. 82-1, PageID. 501-06, 510-16). He then challenges his 2020 conviction, arguing that his counsel coerced his guilty plea by failing to inform him that the district court could impose the sentence for the supervised release revocation consecutively to the sentence for the new criminal conviction. (Doc. 82-1, PageID. 503-05). He further challenges the voluntariness of his guilty plea asserting that he lacked notice of the alleged supervised release violation and notice of the criminal charge against him, that his guilty plea to the new criminal offense was unsupported by a factual basis, and that his attorney failed to object to the sentencing calculation in the presentence investigation report, which resulted in an incorrect starting point for a downward departure. (*Id*., PageID. 505-09). He claims that he would have insisted on going to trial if he had known of the district court's discretion to sentence him to consecutive terms of imprisonment. (*Id.,* PageID. 505).

On July 24, 2023, the Government filed a response in opposition to Lutin's motion to vacate (Doc. 86), and Lutin then filed a reply brief in response (Doc. 89).

## II. <u>Legal Analysis</u>

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Lutin challenges two separate terms of imprisonment in this action: 1) a 60-month term after revocation of supervised release after a term of imprisonment arising from a 2010 conviction and 2) a 90-month term, which was subsequently reduced to 73 months, which was entered after a plea of guilty in 2020. "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). This waiver includes claims of ineffective assistance of counsel that do not implicate the decision to plead guilty. *Id.; see also Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (holding that the defendant's "guilty plea was voluntary and knowingly made" and, therefore, he could not "attack the ineffectiveness of his counsel in any respects other than as the alleged ineffectiveness bears upon counsel's faulty advice that coerced a guilty plea").

## A. <u>Revocation Sentence</u>

Lutin first challenges his revocation sentence, arguing: 1) his attorney performed deficiently by failing to request a final hearing on the allegations set forth in the revocation petition, which resulted in a sentence that was procedurally and

6

substantively unreasonable; 2) his attorney performed deficiently by failing to object to the classification of his supervised release violations, thereby causing the district court to incorrectly calculate the guideline range of imprisonment; and 3) his counsel rendered ineffective assistance of counsel because he did not argue to the District Court that Lutin was "technically" not on supervised release when he committed the 2020 criminal offense because the First Step Act modified the supervised release term for crack cocaine offenders. (Doc. 82, PageID. 488-89; Doc. 82-1, PageID. 501-06, 510-16).

To establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926 (2002).[1]

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.

---

[1] It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022 (2002).

With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Sec'y, Dep't of Corr.,* 433 F. App'x 852, 855 (11th Cir. 2011) (internal quotation marks and citations omitted). "Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred." *Pair v. Cummins,* 373 F. App'x 979, 982 (11th Cir. 2010). "The court must indulge a strong presumption that the attorney's conduct was objectively reasonable." *Id*.

Given the two-prong nature of the test for adjudicating ineffective assistance of counsel claims, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Johnson,* 256 F.3d at 1176 (citation omitted); *see also Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." (citations omitted)), *cert. denied,* 531 U.S. 1204 (2001). When applying the *Strickland* standard, courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied*, 527 U.S. 1008 (1999); *see also Adamson v. United States,* 288 F. App'x 591, 594 (11th Cir. 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010 (2008); *Butcher v. United States*, 368

F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

The record affirmatively refutes Lutin's claim that his counsel was ineffective for failing to request a final hearing on the allegations set forth in the revocation petition. While a criminal defendant is entitled to a final revocation hearing, he may waive it. Fed. R. Crim. P. 32.1(b)(2). In this case, the record shows that Lutin knowingly and voluntarily waived a final hearing in his revocation case, both in writing and verbally. First, he signed a Waiver of Revocation Hearing, which stated that he recognized his statutory right to a revocation hearing but voluntarily waived it after consulting with his attorney. (Cr. A. No. 10-cr-0081-JB-MU, Doc. 68). He also stated in the Waiver that he admitted to the violations set forth in the Petition approved by the Court on August 13, 2020. (*Id.*).

Then, at the revocation hearing, the District Judge and Lutin discussed the waiver:

> The Court: ... I have been given a waiver of revocation hearing form that appears to have your signature on it, sir. Is that, in fact, your signature?
>
> Lutin: Yes, sir.
>
> The Court: Just for the purposes of the record so that we can be clear, the United States has filed a petition to revoke your supervised release based on your conviction in the other matter that we're going to take up. You are entitled to an evidentiary hearing where you will require the United States to prove that. By signing this, you acknowledge you understand your rights and that you are not requiring the United States to put on the evidence; is that your understanding, sir?
>
> Lutin: Yes, sir.

The Court: Okay. Well, then I do accept your waiver. I do find that you have violated the terms and conditions of your supervised release. So first we will take that up. I will hear from the United States. I will hear from Mr. Bradford. And then I will hear from you.

(Doc. 96 (SEALED), PageID. 649-50).

Hindsight and regret cannot overcome the fact that Lutin knowingly and voluntarily waived his right to an evidentiary hearing on his revocation. Based on the unequivocal record, Lutin cannot show that his counsel's performance was deficient with regard to the waiver of the revocation hearing. Nor can Lutin demonstrate prejudice because, under the facts of this case, he cannot show a reasonable probability that the outcome of the revocation proceeding would have been different if counsel had not filed his signed Waiver of Revocation Hearing.

Lutin also argues that his attorney performed deficiently by failing to object to the classification of his supervised release violations, thereby causing the district court to incorrectly calculate the guideline range of imprisonment. He cannot obtain relief on this claim either. Here, Lutin argues that, in his revocation proceeding, the Court improperly found that his violation was a Grade A violation and that his attorney was deficient because he did not object to that finding. (Doc. 82-1, PageID. 510-12). Lutin appealed his revocation to the Eleventh Circuit Court of Appeals and argued therein that the district court failed to properly consider the 18 U.S.C. § 3553(a) factors and that his revocation sentence was substantively unreasonable. On appeal, he also admitted that "[t]he violations alleged in the revocation petition range from Grade A to Grade C violations" and that "the range of imprisonment for the SRT revocation was

10

calculated correctly." (Doc. 86-1, PageID. 575). Lutin had the opportunity to raise other challenges to his revocation sentence on appeal; for example, that his violation was not a Grade A violation, but he did not do so and, rather, asserted that this finding was correct in the trial court. Lutin may not now argue the contrary under the guise of an ineffective assistance of counsel claim.

Moreover, Lutin's argument is simply wrong on the merits. Section 7B1.1 of the sentencing guidelines provides for three classifications of supervised release violations, ranging from Grade A to Grade C. Conduct that constitutes an "offense punishable by a term of imprisonment exceeding one year that ... (ii) is a controlled substance offense" is a Grade A Violation. U.S.S.G. § 7B1.1(a)(1). Where there is more than one violation or offense, "the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b). The Probation Office assigned a Grade A to the most serious violation – trafficking cocaine. (*See* Doc. 57 (SEALED)). Under Alabama law trafficking cocaine is a "controlled substance offense" that is "punishable by a term of imprisonment exceeding one year." Ala. Code § 13A-12-231; U.S.S.G. § 7B1.1(a). Lutin's trial counsel was clearly not ineffective for failing to make a meritless objection to the finding that his violation was a Grade A violation. *See Denson v. United States,* 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance.").

Likewise, Lutin's attempt to frame his attorney's performance as deficient for failing to argue that Lutin was "technically" not on supervised release at the time of the 2020 offense fails. Lutin never filed, nor did the court grant, a motion to reduce his earlier sentence under § 404 of the First Step Act. Therefore, he was still on supervised

11

release when he committed the violations and counsel had no legal basis on which to make an argument to the contrary. Accordingly, his performance was not deficient. *Id.*

**B. 2020 Guilty Plea/2021 Sentencing**

Lutin also challenges his 2020 conviction, arguing that his counsel coerced his guilty plea by failing to inform him that the district court could impose the sentence for the supervised release revocation consecutively to the sentence for the new criminal conviction, resulting in 150 months' imprisonment. (Doc. 82-1, PageID. 504-05). He further challenges the voluntariness of his guilty plea asserting that he lacked notice of the alleged supervised release violation and notice of the criminal charge against him, that his guilty plea to the new criminal offense was unsupported by a factual basis, and that his attorney failed to object to the presentence investigation report, which resulted in an incorrect starting point for a downward departure.[2] (*Id.,* PageID. 505-09). He claims that he would have insisted on going to trial if he had known of the district court's sentencing discretion. (*Id.,* PageID. 505). He claims that his attorney's deficient performance before and during his sentencing resulted in a sentence that was procedurally and substantively unreasonable. (*Id.*, PageID. 501).

As discussed above, to prevail on an ineffective assistance of counsel claim, the petitioner must show both that his counsel's performance was deficient and that this deficiency prejudiced his defense. The *Strickland* standard for evaluating claims of

---

[2] This final argument has been rendered moot. On May 29, 2024, while his § 2255 motion was pending, Lutin filed a Motion to Reduce Sentence pursuant to 18 U.S.C. 3592(c)(2). (Doc. 91). The Court granted his motion on August 6, 2024, and reduced his sentence on the 2020 conviction from 90 months to 73 months. (Doc. 95).

ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). The Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, as in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States,* 288 F. App'x 648, 649 (11th Cir. 2008) (quoting *Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir. 1984)). With regard to the prejudice prong, the *Hill* Court, recognizing the fundamental interest in the finality of guilty pleas identified in *United States v. Timmreck*, 441 U.S. 780, 784 (1979), held that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 58-59. A petitioner's bare allegation that he would not have pled guilty but for his attorney's deficient performance is insufficient to establish prejudice. *Roach v. Roberts,* 373 F. App'x 983, 985 (11th Cir. 2010).

To be knowing and voluntary, a guilty plea must exhibit three core principles: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999) (quoting *United States v. Jones*, 143 F.3d 1417, 1418-19 (11th Cir. 1998)) (internal quotation marks omitted). A plea of guilty is considered voluntary if it was "entered by one fully aware of the direct consequences of the plea," and not induced by threats, misrepresentation, or "promises that are by their nature improper as having no

13

proper relationship to the prosecutor's business." *Bousley v. United States*, 523 U.S. 614, 619 (1998) (citations and internal quotation marks omitted). A plea is intelligent in a constitutional sense if a defendant received "real notice of the true nature of the charge against him." *Id*. at 618 (citations and internal quotation marks omitted). If the defendant "was advised by competent counsel, was in control of his mental faculties, and was made aware of the nature of the charge against him," his plea was entered intelligently even if at the time of the plea, he "did not correctly assess every relevant factor entering into his decision." *Id.* at 619 (citations and internal quotation marks omitted).

On November 30, 2020, Lutin pleaded guilty in the instant case, pursuant to a written plea agreement, to conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846. (Docs. 61, 62). In the Plea Agreement that he signed, Lutin acknowledged that he understood his rights to be represented by an attorney, to plead not guilty, to have a trial by impartial jury, to confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense, and to not be compelled to incriminate himself. (Doc. 61, PageID. 412). He agreed to waive these rights and to plead guilty to Count One of the Indictment, charging conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846. (*Id*.). Lutin acknowledged that he understood that the statements he made under oath while pleading guilty were required to be completely truthful and that he could be prosecuted for intentionally making false statements. (*Id*., PageID. 413). He agreed that he was not under the influence of alcohol, drugs, or narcotics and that he was certain that he was in full possession of his senses and mentally competent to understand the Plea Agreement and the guilty plea hearing. (*Id*.). He acknowledged that

14

he had the benefit of legal counsel in negotiating the Plea Agreement, that he had discussed the facts of the case with his attorney, and that his attorney explained to him the essential legal elements of the criminal charges which had been brought against him and his understanding of the United States's evidence. (*Id*.). Lutin stated that he believed that his attorney had represented him faithfully, skillfully, and diligently, and that he was completely satisfied with the legal advice of his attorney. (*Id*.). He agreed that his plea was freely and voluntarily made and was not the result of force, threats, promises, or representations apart from those set forth in the Agreement, that there had been no promises from anyone as to the particular sentence the court would impose, and that he was pleading guilty because he was guilty. (*Id*., PageID. 414). The Agreement stated that the maximum period of imprisonment the court could impose was 10 years to life. (*Id*., PageID. 415). The Agreement also stated that the United States Sentencing Guidelines are advisory and do not bind the Court. (*Id*.). Lutin acknowledged that he had reviewed the application of the guidelines with his attorney and understood that no one could predict with certainty what the sentencing range would be until after the pre-sentence investigation had been completed and the Court had ruled on the results of the investigation. (*Id*.). He also stated that he understood that, at sentencing, the Court might not necessarily sentence him in accordance with the guidelines, that the Plea Agreement did not create any right to be sentenced in accordance with the guidelines, or below or within any particular guideline range, and that determination of the sentencing range, guideline level, and actual sentence imposed was solely the discretion of the Court. (*Id*., PageID. 415-16). In exchange for his guilty plea, the United States agreed to not bring any additional charges against

15

Lutin related to the facts underlying the Indictment and would move to dismiss any remaining charges once sentence was imposed. (*Id*., PageID. 417).

In the written Plea Agreement, immediately preceding his signature, Lutin attested:

> I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

(*Id.,* PageID. 423-24).

On November 30, 2007, Lutin appeared at his guilty plea hearing with his attorney. He testified that he had never been treated for any type of mental illness or addiction to narcotic drugs and that he was not currently under the influence of alcohol, drugs, or medication. Lutin also testified, in relevant part, as follows:

> Q.  Have you received a copy of the indictment in your case, had a full opportunity to read it and review it with your attorney, and do you fully understand the charge contained in that indictment?
>
> A.  Yes, sir.
>
> Q.  Are you fully satisfied with the representation you've received from your attorney in this case, and have you fully discussed with your attorney all of the facts surrounding the charges?
>
> A.  Yes, sir.
>
> Q.  ... Did you, in fact, sign [this plea agreement], sir?
>
> A.  Yes, sir.

Q.  All right, by signing these documents, you're acknowledging that you received a copy; that you fully discussed them with your attorney; that you fully understand the terms and conditions of both the plea agreement and the factual resume; and that you agree with those documents. Are all of those things true?

A.  Yes, sir.

Q. Have there been any promises made to you by anyone attempting in any way to force you to plead guilty or to pressure you or threaten you in any way?

A. No, sir.

Q.  All right. Now, the penalties that could be imposed if you're convicted of the count to which you're pleading guilty today are outlined in the plea agreement. If you're convicted of Count One of the indictment, you could receive up to a mandatory minimum ten years to life imprisonment; a fine to not exceed eight million dollars; a term of supervised release of eight years to life which would follow any term of imprisonment and if you violate any conditions of supervised release, you could be imprisoned for the entire term of supervised release; a mandatory special assessment of $100; and such restitution as may be ordered by the Court as well as forfeiture of property. Do you understand that?

A.  Yes, sir.

Q.  Are you presently on probation, parole, or supervised release as the result of a prior conviction in any other case?

A.  Yes, sir.

Q. Okay. So you understand that pleading guilty and being adjudged guilty could be a violation of your terms in that other case?

A. Yes, sir.

Q. And you've discussed that with [your attorney]?

A. Yes, sir.

17

\* \* \*

Q.  The United States Sentencing Commission has issued sentencing guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how those guidelines might affect your case?

A.  Yes, sir.

Q. The Court will not be able to determine an appropriate sentence for your case until after the presentence report has been completed and both you and the United States have had an opportunity to challenge the facts that are reported by the probation officer. Do you understand that?

A. Yes, sir.

Q. The sentence imposed might be different from any estimate your attorney or anyone else may have given you. Do you understand that?

A. Yes, sir.

Q. After it has been determined what guideline applies to a case, the judge has the authority to impose a sentence that is more severe or less severe than the sentence called for in the guidelines. Do you understand that?

A.  Yes, sir.

Q.  If the sentence is more severe than you expected or if I do not accept the sentencing recommendation in your plea agreement, you will still be bound by your plea. Even if you don't like the sentence that's imposed by the Court, you will not be able to withdraw your plea. The time to make that decision is now. Do you understand that?

A.  Yes, sir.

\* \* \*

Q. You also have the right to waive your right to appeal, and when I reviewed your plea agreement, I noticed that you are waiving your right to appeal your conviction and sentence either by filing a direct appeal or a collateral appeal with the

following limited exceptions: Any punishment in excess of the statutory maximum; any punishment constituting an upward departure of the guideline range; and any claim of ineffective assistance of counsel. Do you understand that?

A. Yes, sir.

Q. You do have the right to plead not guilty to any offense charged against you and to persist in that plea. You would then have the right to a trial by jury. During that trial, you would have the right to assistance of counsel for your defense and to the appointment of counsel if you could not afford to hire one; the right to see and hear all of the witnesses and to have your attorney cross-examine them; the right to testify yourself or to decline to testify and remain silent; and the right to have the Court issue subpoenas for any witnesses you wish to call in your defense. At the trial, you would be presumed to be innocent, and the United States would have the burden of proving that you're guilty beyond a reasonable doubt. Before you can be convicted, all 12 jurors must be convinced the United States has met that burden. If you're found guilty after a trial, you would have the right to appeal that conviction to a higher court and if you could not afford to pay the costs of an appeal, the government would pay those costs for you. Do you understand all that?

A. Yes, sir.

Q. If you plead guilty, however, and if the Court accepts your plea, there will be no trial. You will be waiving or giving up your right to a trial and all the other rights I just described. Do you understand that?

A. Yes, sir.

(Draft Transcript of Guilty Plea Hearing, pp. 5-10).

The Government then provided the Court a statement of the facts that it would rely upon at trial to support the charge of conspiracy to possess with intent to distribute a controlled substance. Lutin agreed with the statement of facts and admitted that he had done those acts. The Court's questioning of Lutin then continued:

19

Q. Then, I find that the facts and acts to which you have admitted support and state a violation of the charge contained in the indictment to which you're pleading guilty. So, Mr. Lutin, how do you now plead to the charge? Count One? Guilty or not guilty?

A.  Guilty.

THE COURT:  It is the finding of this Court … that you are fully competent and capable of entering an informed plea, that you are aware of the nature of the charge and the consequences of your plea and that your plea of guilty is a knowing and voluntary plea supported by independent basis in fact containing each of the essential elements of the offense. Your plea is therefore accepted, and you are now adjudicated guilty of the offense.

(*Id.*, p. 14).

"There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). Moreover, a defendant's representations regarding the voluntary nature of his plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Lutin argues in support of his motion that his guilty plea was not knowingly, voluntarily, or intelligently given because his attorney failed to inform him that the district court could impose the sentence for the supervised release revocation consecutively to the sentence for the new criminal conviction, resulting in 150 months' imprisonment, that he lacked notice of the alleged supervised release violation and notice of the

20

criminal charge against him when he decided to plead guilty, that his guilty plea to the new criminal offense was unsupported by a factual basis, and that his attorney failed to object to the presentence investigation report, which resulted in an incorrect starting point for a downward departure. Both the factual resume attached to the written Plea Agreement and the Government's recitation, at the guilty plea hearing, of the facts that would be introduced at trial informed Lutin of the facts that the Government was relying upon to prove its case. At the guilty plea hearing, Lutin stated that the facts set forth in the factual resume and by the Government orally at the hearing were true.

A review of the record clearly demonstrates that Lutin's guilty plea was free of coercion, that Lutin understood the nature of the charge against him, that Lutin was aware of the direct consequences of the guilty plea, and that he voluntarily pled guilty to Count One of the indictment. *See United States v. Monroe,* 353 F.3d 1346, 1354 (11th Cir. 2003). Because the Court finds that Lutin's guilty plea was knowingly, voluntarily, and intelligently given, this stated ground for habeas relief also fails. Moreover, the Court finds no basis under the facts set forth above of any deficiency in his counsel's performance, and importantly, finds no prejudice based upon Lutin's bare allegation that he would not have pled guilty and would have proceeded to trial. He cannot now claim that his attorney was ineffective as set forth in his motion for an offense to which he willingly and openly pled guilty in exchange for favorable treatment by the Government.

Based on the information and reasons stated, Lutin's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody is due to be denied.

## CERTIFICATE OF APPEALABILITY

21

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). The instant habeas petition is being denied on the merits of the alleged constitutional claim, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (internal quotation marks omitted)). In this case, a reasonable jurist could not conclude that this Court is in error for denying Lutin's motion to vacate, nor could a reasonable jurist conclude that Lutin should be allowed to proceed further with respect to his constitutional claim. Accordingly, Lutin is not entitled to a certificate of appealability.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an

objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-00165-WS-C, Doc. 14 (order from Eleventh Circuit denying petitioner a certificate of appealability in a case in which this exact procedure was outlined in the report and recommendation); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011).

## CONCLUSION

The undersigned Magistrate Judge **RECOMMENDS** that Lutin's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 82) be **DENIED** for the reasons stated above. Lutin is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period

for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

       **DONE** this the **29**th day of **May, 2026**.

                 s/P. BRADLEY MURRAY
                **UNITED STATES MAGISTRATE JUDGE**